IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| | |
|---|---|
| MATTHEW TRENT SANDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 624-025 |
| ) | |
| MICHELLE KING, Acting Commissioner ) | |
| of Social Security Administration, ) | |
| ) | |
| Defendant.[1] ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff appeals the decision of the Acting Commissioner of Social Security ("the Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Acting Commissioner's final decision be **AFFIRMED**, and a final judgment be **ENTERED** in favor of the Acting Commissioner.

**I.     BACKGROUND**

Plaintiff protectively applied for DIB and SSI on September 13, 2019, and he alleged a disability onset date of October 7, 2017. Tr. ("R."), pp. 15, 222, 226. Plaintiff was forty-five years

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Court **DIRECTS** the **CLERK** to substitute Michelle King, Acting Commission of Social Security Administration, as the proper Defendant.

old on October 7, 2017, and was fifty-one years old at the time the Administrative Law Judge ("ALJ") issued the decision currently under consideration. R. 25-27, 222, 226. Plaintiff's alleged disabilities are cervical and lumbar degenerative disc disease, osteoarthritis, anxiety, post-traumatic stress disorder ("PTSD"), personality disorder, hypertension, pheochromocytomas/adrenal gland disorder, high blood pressure, kidney stones, and seizures. R. 18, 256. Plaintiff reported completing two years of college, R. 257, and prior to his alleged disability date, accrued a history of past work that included a paramedic, dispatcher, desk clerk, and assistant funeral director, R. 25, 245-49, 258.

The Social Security Administration denied Plaintiff's application initially and on reconsideration. R. 69-130. Plaintiff requested a hearing before an ALJ, R. 159-60, and ALJ Michael Dennard held a hearing on August 3, 2023, R. 32. Represented by counsel, Plaintiff appeared and testified, as did vocational expert ("VE") Kim Bennett. R. 32-68. On November 1, 2023, the ALJ issued a decision finding Plaintiff not disabled. R. 15-27.

Applying the sequential process required by 20 C.F.R. § 404.1520 and § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since October 7, 2017, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

2. The claimant has the following severe impairments: cervical and lumbar degenerative disc disease, osteoarthritis, anxiety, post-traumatic stress disorder (PTSD)[,] [p]ersonality disorder, hypertension, and pheochromocytomas/adrenal gland disorder (20 CFR 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity [("RFC")] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift/carry and push/pull 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for up to 6 hours in an 8-hour workday and sit for up to 6 hours in an 8-hour workday. The claimant can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. He can frequently balance, kneel and crouch and occasionally stoop and crawl. He can occasionally reach overhead with the left upper extremity. The claimant can occasionally work in extreme cold and vibration but should avoid unprotected heights and hazardous machinery. He can sustain attention, concentration, effort, and pace to perform simple, routine tasks while understanding, remembering, and carrying out simple, short instructions and make simple, work-related decisions for 2-hour segments throughout an 8-hour workday for 40-hour workweek. He can occasionally interact with coworkers, supervisors, and the public. The individual can tolerate a work environment with occasional workplace changes. The claimant would be off task 5% of the workday and absent one day a month.

    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

5. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

    The claimant has not been under a disability, as defined in the Social Security Act, from October 7, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

R. 18-27.

When the Appeals Council denied Plaintiff's request for review of the ALJ's decision, R. 1-3, the Acting Commissioner's decision became "final" for the purpose of judicial review, 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting remand, arguing the ALJ's decision is not supported by substantial evidence because the ALJ did not properly evaluate Plaintiff's subjective testimony. (See doc. no. 10, "Pl.'s Br.") The Acting Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed. (See doc. no. 11, "Comm'r's Br.")

## II.     STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III.   DISCUSSION

Plaintiff argues the ALJ's decision is not supported by substantial evidence because the ALJ did not properly evaluate Plaintiff's subjective testimony. Pl.'s Br., pp. 5-9. Specifically, Plaintiff alleges the ALJ failed to articulate how Plaintiff's testimony about his subjective symptoms is inconsistent with the record evidence, as the ALJ is required to do under applicable regulations, which constitutes legal error. Id. at 6. Plaintiff explains that following the ALJ's determination Plaintiff's testimony was not entirely consistent with the record, the ALJ summarized Plaintiff's medical treatment. Id. Plaintiff claims this summary is insufficient because the ALJ never "provided any reason whatsoever" to explain "which part or parts of Plaintiff's testimony was inconsistent" with the summarized objective evidence. Id. at 6-7. In other words, Plaintiff argues the ALJ failed to provide "any semblance of a logical bridge" between his conclusion Plaintiff's testimony was inconsistent with the medical evidence and how he reached this conclusion, which warrants remand. Id. at 8-9. The Court concludes the ALJ's credibility determination is adequately explained, supported by substantial evidence, and should be affirmed.

### A. Step Four Framework for Formulating Plaintiff's RFC

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012) (*per curiam*). Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (*per curiam*) (citing 20 C.F.R. § 404.1569a(b)-(d)).

### B. Evaluating Subjective Complaints

As part of formulating the RFC, the ALJ must evaluate a claimant's subjective complaints, for which the Eleventh Circuit has established a three-part standard of evaluation. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Under the Eleventh Circuit's standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to

6

the claimed restriction.  Id.  When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995).  Under the applicable regulations, the ALJ must consider "all evidence, including subjective statements about the intensity, persistence, and functionally limiting effects of pain [as well as] the objective medical evidence, laboratory findings and statements from treating or nontreating sources about how the symptoms affect the claimant in deciding the issue of disability."  Jarrell v. Comm'r of Soc. Sec., 433 F. App'x 812, 814 (11th Cir. 2011) (*per curiam*) (citing 20 C.F.R. § 404.1529(c)(4)).

In doing so, the ALJ is not judging a claimant's credibility or character for truthfulness, but rather "whether the 'individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record.'"  Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1308 (11th Cir. 2018) (quoting SSR 16-3p, 2016 WL 1020935, at *14170 (orig. publ. Mar. 16, 2016)).  Social Security Ruling 16-3p clarifies "that subjective symptom evaluation is not an examination of an individual's character . . . [but rather is an evaluation of] the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult."  SSR 16-3p, 2016 WL 1020935, at *14167.

"Credibility determinations are, of course, for the [Commissioner], not the courts."  Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985).  Moreover, this Court is required to uphold the

Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980).[2] As courts within this Circuit have explained,

> SSR 16–3p also expressly provides that the ALJ may not make conclusory statements about having considered the symptoms, or merely recite the factors described in the regulations. Rather, the determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent, and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

Ring v. Berryhill, 241 F. Supp.3d 1235, 1251 (N.D. Ala. 2017), *aff'd sub nom*. Ring v. Soc. Sec. Admin., Comm'r, 728 F. App'x 966 (11th Cir. 2018) (*per curiam*); see also Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) ("Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection. . . .") When reviewing the ALJ's credibility determination, "[t]he question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." Werner v. Comm'r of Soc. Sec., 421 F. App'x 935, 939 (11th Cir. 2011) (*per curiam*).

### C. The ALJ Did Not Err in Considering Plaintiff's Subjective Complaints When Formulating the RFC

Plaintiff argues the ALJ's decision is not supported by substantial evidence because the ALJ concluded Plaintiff's testimony was "not entirely consistent" with the record evidence but "failed to explain how Plaintiff's testimony is inconsistent" with objective evidence. Pl.'s Br., p. 6; see also R. 22. Particularly, Plaintiff claims the ALJ's summary of medical and other record

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

evidence inadequately supports the ALJ's credibility determination because the ALJ did not articulate the ways in which this evidence is inconsistent with Plaintiff's testimony. Pl.'s Br. at 7. He notes the ALJ's decision does not reference the parts of Plaintiff's testimony that are inconsistent with the record. Id. Plaintiff then describes several pieces of objective evidence that support his subjective complaints: (1) a September 2022 cervical x-ray revealing Plaintiff suffered from moderate degenerative disc disease, (2) Dr. Faust's purported September 2023[3] finding that Plaintiff's degenerative disc disease limits his ability to complete daily activities due to pain, and (3) Dr. Whitley's report that Plaintiff experienced anxiety throughout the consultative exam. Id. at 7-8. Plaintiff concludes the ALJ's summary discussion of Plaintiff's medical treatment insufficiently explains why the ALJ discredited Plaintiff's testimony because this summary does not "provid[e] any semblance of a logical bridge to enlighten the Court as to how [the ALJ] arrived at this conclusion." Id. at 6, 8-9. The Court disagrees and finds the ALJ's summary of the objective evidence sufficiently traces the path between the ALJ's credibility determination and his reasoning. See James W. v. Comm'r, Soc. Sec. Admin., No. 3:20-cv-00116, 2022 WL 17078899, at *17 (N.D. Ga. Mar. 29, 2022) (citation omitted).

At the hearing, Plaintiff testified, as the ALJ explained, that he has a history of kidney cancer and developed a renal gland tumor, which affects his mental state and causes his blood pressure to fluctuate. R. 21. The ALJ also recounted Plaintiff's testimony about his anxiety, depression, and desire not to be around people, noting Plaintiff testified to not attending social events or going to the grocery store because he thought people wanted to harm him. Id. The ALJ further described Plaintiff's testimony that he does not watch television because he is unable to

---

[3] As the Court explains below, this exam occurred in October 2022.

concentrate for long periods, and he is unable to do things he used to do. Id. at 21-22. The ALJ also recounted Plaintiff's testimony that Plaintiff experiences "day and night terrors due to trauma he experienced as a paramedic/firefighter," is triggered by "train horns or smells," and has panic attacks lasting an hour, which in turn affect Plaintiff's concentration and functioning. Id. at 22. Finally, the ALJ noted Plaintiff's testimony about back and neck issues from the "wear and tear of being a firefighter," his difficulty turning his head and lifting his arms, and his ability to sit for an hour before having to stand, walk for up to thirty minutes, and "perform household chores in stages." Id.

> After reviewing Plaintiff's subjective complaints, the ALJ explained:
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, *they are inconsistent because the medical evidence did not support them.*

Id. (emphasis added).

The ALJ then reviewed medical evidence from 2017 through 2022. R. 22-24. In this comprehensive review, the ALJ discussed medical evidence verifying Plaintiff's reported kidney issues and pheochromocytoma diagnosis. R. 22 (citing R. 389-92, 396-97, 403, 405). The ALJ detailed Plaintiff's October 2017 emergency room visit for "sudden onset left flank pain" similar to the "typical kidney stone pain" experienced by Plaintiff. Id. (citing R. 389). The ALJ noted although Plaintiff experienced "minimal left-sided abdominal pain," his exam was otherwise unremarkable, and he was discharged after receiving pain medication and IV fluids. Id. (citing R.

10

391-92).

Regarding Plaintiff's Georgia Department of Corrections ("GDOC") records, the ALJ discussed November 2017 records indicated Plaintiff "had a 'no prolonged standing' restriction," id. (citing R. 400, 403) (internal quotation marks added), while another form stated Plaintiff had "no mobility issues," id. (citing R. 405), and the July 2019 treatment record showed Plaintiff "had no complaint of back problems," id. (citing R. 494). The ALJ further noted December 2017 GDOC records revealed Plaintiff experienced "chronic persistent edema to the lower extremities." Id. (citing R. 491). However, the ALJ then observed "persistent edema was not noted anywhere else in the record." Id.

The ALJ also described the results of several medical tests, including a renal ultrasound that "revealed a normal left kidney, possible 4 cm mass in the left suprarenal region that could involve the renal glad, and a mildly enlarged prostate," a December 2017 echocardiogram revealing "a left ventricular ejection fraction of 60-65%" and dilated left atrium but that was otherwise normal, and "unremarkable" abdominal imaging "except for upper and mid quadrant surgical clips and multilevel spondylosis." Id. (citing R. 501, 503, 506). Finally, the ALJ noted a September 2022 cervical x-ray performed by Dr. Nguyen "showed degenerative disc disease with disc space narrowing and endplate sclerosis at C4-5 and C 6-7." R. 23 (citing R. 597).

The ALJ also reviewed the record evidence as it related to Plaintiff's subjective complaints concerning his mental impairments. R. 22-23. Notably, the ALJ pointed to several instances in Plaintiff's medical evidence that supported his testimony about his mental health impairments: during visits to Hearts and Hands Clinic, Plaintiff reported a history of PTSD and feeling anxiety and stress, R. 22-23 (citing R. 554, 564, 566), and he had a history of mental health treatment at Pineland Mental Health beginning in January 2022 for anxiety and PTSD, in which Plaintiff

"reported the occasional flashback, anxiety, and depression," R. 23 (citing R. 625-30).

However, the ALJ also noted medical evidence undermining Plaintiff's assertions about the extent of his mental impairments. R. 22-23. Specifically, the ALJ identified Plaintiff did not endorse anxiety or depression at an October 2017 emergency room visit, R. 22 (citing R. 390), and GDOC records from 2017 to 2019 indicated Plaintiff had no mental health history, treatment, or reported mental health problems, id. (citing R. 400, 405, 494). Furthermore, the ALJ discussed that although Plaintiff presented to Pineland Mental Health in January 2022 requesting treatment for anxiety and PTSD, he reported improvement to his condition after a medication change. R. 23 (citing R. 584-86, 612, 625-27). The ALJ also observed Plaintiff "reported doing well from a mental health standpoint" in April 2022, had a normal mental status, and continued to be prescribed medication for mental health. Id. (citing R. 587-89, 628-30).

After this analysis of the record, the ALJ evaluated the medical opinions of Plaintiff's consultative examiners and state agency psychological consultants, which provided additional support and context for Plaintiff's RFC and the ALJ's finding that Plaintiff's subjective complaints were not fully consistent with the medical evidence. R. 23-25. Notably, the ALJ flagged Dr. Davis's January 2020 consultative physical examination, in which Dr. Davis "opined [Plaintiff] had no limitations." R. 23 (citing R. 572-80). The ALJ explained this examination was only partially persuasive in light of "the overall record [noting] degenerative disc disease on later imaging with lifting and carrying limitations." Id. (citing R. 597). The ALJ found Dr. Faust's consultative physical examination persuasive, which revealed Plaintiff "had a range of motor deficits with bending and rotating the cervical spine" and experienced back pain when changing positions during the exam. R. 24 (citing R. 598-608). However, the ALJ also described that this examination found Plaintiff had 5/5 strength in his extremities and in other fine motor movements,

had normal gait and station, and was able to bend and squat without difficulty. Id.

Furthermore, the ALJ assessed Dr. Whitley's August 2022 consultative psychological evaluation, in which Plaintiff reported he was working on obtaining a master's degree and had "no issues with activities of daily living." R. 23-24 (citing R. 592, 593). The ALJ also noted Dr. Whitley's evaluation described Plaintiff "displayed restless behavior, moderate anxiousness, and was polite but somewhat agitated." R. 24 (citing R. 593).

The ALJ also described the third-party function report submitted by Plaintiff's mother, which the ALJ found "persuasive to the extent [it was] supported by objective medical examination and testing," but also stated it was not fully persuasive because it was "less than wholly consistent with the objective medical evidence." R. 25.

After reviewing all of this evidence, the ALJ stated: "[b]ased on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by totality of the medical evidence, the states agency consultant's findings, and the consultative examiner's opinions." R. 25.

Plaintiff's main objection concerning the ALJ's assessment of Plaintiff's subjective testimony is the ALJ's summary, described above, fails to illuminate the ALJ's reasons for discrediting Plaintiff because nowhere in this summary does the ALJ reference Plaintiff's testimony or otherwise articulate how the described evidence contradicts Plaintiff's testimony. Pl.'s Br., pp. 6-9. However, the Court finds the ALJ's examination of the evidence, described in detail *supra*, is sufficient and created an implication "so clear as to amount to a specific credibility finding." Foote, 67 F.3d at 1561-62. By clearly laying out Plaintiff's subjective complaints and the objective evidence both in contradiction and support, the ALJ made clear how he considered Plaintiff's subjective complaints in light of the other evidence. For example, the ALJ's decision

13

cited objective evidence in which Plaintiff's mental and physical exams were reportedly normal. R. 23. The obvious implication is that this evidence discredits Plaintiff's testimony about the extent of his impairments.

Plaintiff's citation to record evidence that supports his hearing testimony is unpersuasive. As described above, the ALJ assessed Dr. Nguyen's September 2022 cervical x-ray revealing moderate degenerative disc disease, as well as Dr. Whitley's examination underscoring Plaintiff's anxiety, when formulating Plaintiff's RFC. R. 23-24. Although Dr. Nguyen and Dr. Whitley's exams support Plaintiff's testimony about his limitations, the ALJ's decision also pointed to other objective evidence undermining these findings. R. 22-25. For example, Dr. Faust's exam acknowledged Plaintiff's degenerative disc disease and associated back pain, but also "opined [Plaintiff] could lift and carry up to twenty pounds frequently and continuously walk, stand, and sit." R. 24. Thus, Plaintiff's argument asks the Court to reweigh the evidence in his favor, which is not the Court's role. Moore, 405 F.3d at 1211.

Moreover, Plaintiff's brief cites to a September 2023 examination by Dr. Faust as supporting Plaintiff's physical limitations, (Pl.'s Br., p. 7), and the Commissioner argues the ALJ's failure to incorporate this examination into this decision does not change the ALJ's RFC formulation, (Comm'r's Br., p. 9). However, the Court's independent review of the record reveals a September 2023 exam never occurred; rather, Plaintiff appears to have mistakenly cited to Dr. Faust's medical license expiration date of September 30, 2023, which is listed below Dr. Faust's signature, on the October 2022 consultative exam. R. 608; see also R. 598-607. Thus, any concerns about the ALJ's purported failure to analyze a September 2023 exam by Dr. Faust are misplaced.

Ultimately, this Court's job is not to review the administrative record *de novo*, but rather is

14

to review the record to determine whether there is substantial evidence to support the Commissioner's factual findings, and if so found, uphold the Commissioner even if the evidence preponderates in favor of the claimant. See Crawford, 363 F.3d at 1158-59. Plaintiff concludes the ALJ failed to adequately explain his assessment that Plaintiff's subjective complaints were not entirely consistent with the record evidence because the ALJ's summary never specifically references any parts of Plaintiff's testimony. See Pl.'s Br., pp. 5-9; Comm'r's Br., pp. 5-11. However, this lack of specific citations to Plaintiff's testimony does not mean the Commissioner's decision must be reversed. "The ALJ's 'credibility determination does not need to cite particular phrases or formulation[s], but it cannot merely be a broad rejection' that fails to consider a claimant's 'medical condition as a whole.'" Gala v. Comm'r of Soc. Sec., No. 2:23-cv-642, 2024 WL 2880417, at *2 (M.D. Fla. Apr. 3, 2024) (quoting Dyer, 395 F.3d at 1210-11), *adopted by* 2024 WL 2239070 (M.D. Fla. May 17, 2024). Here, the ALJ's decision makes clear he adequately considered the record as a whole, including Plaintiff's subjective complaints, when determining the RFC. The ALJ acknowledged Plaintiff's subjective complaints, R. 21-22, but coupled with an extensive review of the record, R. 22-25, determined the complaints were not credible in light of other objective evidence when considering the intensity, persistence, and limiting effects claimed by Plaintiff. Accordingly, he did not broadly reject Plaintiff's medical condition.

Though it would have arguably been *helpful* for the ALJ to specifically cite to the parts of Plaintiff's testimony the ALJ found inconsistent with the record evidence, the ALJ's detailed review of the record evidence nonetheless allows the Court to successfully "trace the path of the ALJ's reasoning to his conclusion" that Plaintiff's subjective complaints are not entirely credible. James W., 2022 WL 17078899, at *17. Accepting Plaintiff's argument would require the Court

15

to follow a particular formulation when making credibility determinations, which is not necessary. See Gala, 2024 WL 2880417, at *2.  Thus, the ALJ properly considered Plaintiff's subjective complaints.  The ALJ's determination is supported by substantial evidence, and the ALJ made no legal error.

IV. **CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g) the Commissioner's final decision be **AFFIRMED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 10th day of February, 2025, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA